IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
MAR 15 2022
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

ALLAN J RILEY and
AMY RILEY,

    Plaintiffs,

v.                                      CIVIL ACTION NO. 4:21-cv-113

LIBERTY MUTUAL GROUP, INC.,
d/b/a LIBERTY MUTUAL INSURANCE,
a/k/a LIBERTY MUTUAL GROUP,
a/k/a LIBERTY INSURANCE GROUP, INC.,

    Defendant.

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Allan J Riley and Amy Riley's (collectively "Plaintiffs") Motion to Remand this case to the Circuit Court for Mathews County, Virginia, pursuant to 28 U.S.C. § 1447. Pls.' Mot. Remand, ECF No. 7. Plaintiffs also seek an award of attorney's fees. *Id.* The Court has considered the memoranda of the parties and this matter is now ripe for determination. *See* Pls.' Mem. Supp. Mot. Remand, ECF No. 8 ("Pls.' Mem. Supp."); Def.'s Mem. Opp. Pls.' Mot. Remand, ECF No. 13 ("Def.'s Mem. Opp."); Pls.' Reply to Def.'s Mem. Opp. Pls.' Mot. Remand, ECF No. 19 ("Pls.' Reply"). Upon review, the Court finds that a hearing on this Motion is not necessary. *See* E.D. VA. LOCAL CIV. R. 7(J). For the reasons stated herein, the Court finds that it has subject matter jurisdiction over the instant action. Accordingly, Plaintiffs' Motion to Remand is **DENIED** and Plaintiffs' request for an award of attorney's fees is **DENIED**.

                I.      **FACTUAL AND PROCEDURAL HISTORY**

On August 3, 2021, Plaintiffs filed a Complaint against Defendant in the Circuit Court for Mathews County, Virginia. Notice Removal Ex. 1, ECF No. 1. On August 11, 2021, Defendant

1

was served with process. *Id.* at ¶ 2. On August 31, 2021, Defendant filed a Demurrer to the Complaint. *Id.* at Ex. 2. The Complaint alleges two counts related to Plaintiffs' homeowners insurance claim resulting from loss under the policy they purchased from Defendant: Breach of Contract of Insurance (Count I); and Declaratory Judgment (Count II). *Id.* at Ex. 1. Specifically, Plaintiffs allege they purchased an all-risk insurance policy ("Policy") from Defendant that includes coverage for the "dwelling." *Id.* at Ex. 1, at ¶¶ 6-11. The Policy provides coverage for damage and loss resulting from a windstorm. *Id.* at ¶ 12.

On or about June 6, 2020, a windstorm caused a tree on Plaintiffs' property to strike their home, which resulted in loss and damage. *Id.* at ¶¶ 16-17. Plaintiffs timely reported this loss to Defendant and made an insurance claim for the damages resulting from the loss under the Policy. *Id.* at ¶ 20. Defendant admitted that the Policy covered Plaintiffs' loss and that it was liable to make a payment on Plaintiffs' claim. *Id.* at ¶¶ 21-22. Defendant made a partial payment on Plaintiffs' claim for damages to their home but failed and refused to make full payment on the claim. *Id.* at ¶ 23. On May 19, 2021, Plaintiffs provided Defendant with an estimate and proof of the loss on the home at actual cash value ("ACV"), including outstanding payments, in the amount of $190,914.78. *Id.* at ¶¶ 25-27. However, Defendant issued Plaintiffs a partial payment consisting of $17,165.53 for emergency services and $115,604.48 for damages to the home. *Id.* at ¶ 24. Accordingly, Plaintiffs brought Breach of Contract of Insurance (Count I) and Declaratory Judgment (Count II) claims against Defendant in their Complaint.

In their Breach of Contract of Insurance claim, Plaintiffs allege Defendant "has an obligation to pay all amounts due under the insurance Policy as a result of the Loss identified above, including, but not limited to, the full replacement cost of damaged property." Notice Removal at Ex. 1, at ¶ 36. Plaintiffs further allege Defendant "is in breach of the contract for,

2

among other things, failure to make full and timely payment on the Claim for the loss and damage to the Property resulting from the Loss." *Id.* at ¶ 38. In so doing, Plaintiffs allege Defendant "failed to act in good faith by, among other acts and omissions, arbitrarily and capriciously refusing to make payment on the Claim in violation of Virginia Code § 38.2-209." *Id.* at ¶ 41. Therefore, Plaintiffs moved the Circuit Court to enter judgment against Defendant for compensatory damages in the amount of $74,000, plus pre-judgment interest, post-judgment interest, an award of Plaintiffs' attorney's fees pursuant to Virginia Code § 38.2-209, and costs and other relief the court may deem just. *Id.* at 6.

In their Declaratory Judgment claim, Plaintiffs allege an actual controversy exists related to the insurance contract and that their "rights cannot be adequately protected at law without a judgment declaratory of their rights to obtain the full payment due under the Policy." *Id.* at ¶ 48. Plaintiffs further allege Defendant is liable under Virginia Code § 38.2-2119 to initially pay the ACV, and, "upon replacement, restoration or repair, to pay for the difference between the [ACV] and the full replacement cost." *Id.* at ¶¶ 49-50. Since Defendant has not paid the ACV, however, Plaintiffs allege they "cannot replace the Property to trigger the additional payment." *Id.* at ¶ 52. Indeed, Plaintiffs allege that Defendant's breach "has resulted in the Plaintiffs' inability to incur all replacement costs and trigger the payment of the replacement cost values, for which Plaintiffs paid under the Policy." *Id.* at ¶ 53. Plaintiffs therefore moved the Circuit Court to enter a declaratory judgment "of their rights as follows: (i) that the Plaintiffs have substantially complied with all Policy conditions; (ii) that Liberty Mutual has an obligation to pay the replacement cost loss without a deduction for depreciation once the actual cash value has been paid as may be incurred in the restoration of the Windstorm Loss; (iii) and such other relief that this Court may seem just and mete." *Id.* at 7-8.

3

On September 8, 2021, Defendant filed a Notice of Removal to federal court pursuant to 28 U.S.C. §§ 1441 and 1446, arguing federal court has original jurisdiction under 28 U.S.C. § 1332(a). *See* Notice Removal at 1-2. On September 20, 2021, Plaintiffs filed the instant Motion to Remand and an accompanying memorandum in support. Pls.' Mot. Remand; Pls.' Mem. Supp. On October 4, 2021, Defendant replied in opposition. Def.'s Mem. Opp. On October 12, 2021, Plaintiffs replied. Pls.' Reply.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and may not exercise jurisdiction absent a statutory basis. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (*citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A defendant may remove any action from state court to federal court in which the federal court has jurisdiction. *See* 28 U.S.C. § 1441(a), (b). But, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). A motion to remand may be submitted after removal of a case from state court, but the motion must be filed within thirty days of removal, unless the defect asserted is subject matter jurisdiction. *Id.* On a motion to remand, the burden of establishing federal subject matter jurisdiction remains with the party seeking removal to the federal forum. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Removal jurisdiction is strictly construed in light of federalism concerns. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Indeed, "removal statutes are to be construed strictly, narrowly, and against removal." *Kluksdahl v. Muro Pharm., Inc.*, 886 F. Supp. 535, 539 (E.D. Va. 1995) (citing

4

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)). Therefore, if federal jurisdiction is doubtful, remand to state court is required. *See Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).

Unless a matter involves an area over which federal courts have exclusive jurisdiction, a district court has subject matter jurisdiction over a case only where the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331 ("federal question jurisdiction"), or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1) ("diversity jurisdiction"). In examining whether the Court has subject matter jurisdiction over a case, the Court relies on "the state of the pleadings and the record at the time of the application for removal." *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906).

"If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). There is, however, one exception: "(A) the notice of removal may assert the amount in controversy if the initial pleading seeks (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." *Id.* at § 1446(c)(2)(A)-(B). "If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection

(b)(3)." *Id.* at § 1446(c)(3)(A). § 1446(b)(3) allows a defendant to remove a case that is not removable according to the initial pleading within thirty days after defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

The issue in this case is whether the amount in controversy exceeds $75,000. The parties do not dispute that diversity of citizenship exists. *See* Notice Removal at ¶¶ 10-11 ("Plaintiffs have been, and currently are, citizens of the Commonwealth of Virginia . . . [and] pursuant to 28 U.S.C. § 1332(c)(1), for the purposes of 28 U.S.C. §§ 1332 and 1441, Liberty is deemed to be a citizen of the Commonwealth of Massachusetts."). Therefore, if the amount in controversy exceeds $75,000, this Court has original jurisdiction under 28 U.S.C. § 1332(a). If not, however, this Court lacks subject matter jurisdiction and this action must be remanded to state court. *See* 28 U.S.C. § 1447(c). Defendant, as the party seeking removal to a federal forum, bears the burden of establishing federal subject matter jurisdiction. *See Strawn*, 530 F.3d at 296.

"[T]he question of removability depends upon the state of the pleadings and the record at the time of the application for removal." *Alabama Great*, 200 U.S. at 216. Defendant contends that the pleadings and record at the time of the application for removal, filed September 8, 2021, consist only of Plaintiffs' original Complaint and Defendant's Demurrer. Def.'s Mem. Opp. at 2. The Court will therefore disregard any mention or reliance on Plaintiffs' Amended Complaint, filed on September 22, 2021, that the parties offer throughout their memoranda. *See* Pls.' Am. Compl., ECF No. 9.

"If removal of a civil action is sought on the basis of the jurisdiction conferred by section

6

1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). In Count I, Plaintiffs pray for compensatory damages in the amount of $74,000, plus pre-judgment interest, post-judgment interest, attorney's fees incurred under Virginia Code § 38.2-209, and any other costs and relief the court deems appropriate. *See* Notice Removal at 6. In Count II, Plaintiffs pray for a declaratory judgment that Plaintiffs substantially complied with all Policy conditions, that Defendant "has an obligation to pay the replacement cost loss without a deduction for depreciation once the actual cash value has been paid as may be incurred in the restoration of the Windstorm Loss[,]" and any other relief the court deems appropriate. *Id.* at 7-8. The Court therefore finds that, exclusive of interests and costs, Plaintiffs demand (1) $74,000, plus an unspecified amount of attorney's fees, in compensatory damages; and (2) nonmonetary relief. *See* 28 U.S.C. § 1332(a).

Because Plaintiffs' initial pleading seeks nonmonetary relief, Defendant's notice of removal appropriately asserts an amount in controversy. Thus, the sum demanded in Count I, alone, does not constitute the amount in controversy. *See* 28 U.S.C. § 1446(c)(2)(A) ("[T]he notice of removal may assert the amount in controversy if the initial pleading seeks [] nonmonetary relief."); *see also Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). Therefore, "removal of the action is proper on the basis of an amount in controversy asserted [in the notice of removal] . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." *Id.* at § 1446(c)(2)(B).

In its Notice of Removal, Defendant states that "[t]his Court has original jurisdiction over the Action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value

7

of $75,000, exclusive of interest and costs, and is between citizens of different States." Notice Removal at ¶ 13. Specifically, Defendant acknowledges that Plaintiffs' Complaint prays for compensatory damages in the amount of $74,000, but provides three arguments as to why the amount in controversy actually exceeds $75,000: Defendant argues (1) the Complaint effectively alleges compensatory damages in the amount of $75,310.30; (2) attorney's fees are properly considered in the amount in controversy calculation, and experience and common sense suggests Plaintiffs' attorney's fees will exceed $1,000; and (3) Plaintiffs seek a declaration in Count II regarding replacement cost, and experience and common sense suggest depreciation would exceed $1,000. *Id.* at ¶¶ 6-9.

First, Defendant argues Plaintiffs' original Complaint "raises a question about the good faith" of their $74,000 demand for several reasons. Def.'s Mem. Opp. at 5. Defendant notes that the demand is only $1,000 below the § 1332(a) jurisdictional threshold of $75,000. *Id.* Moreover, Defendant argues the Complaint's allegations establish that the actual amount of compensatory damages due should be $75,310.30. *Id.* According to the Complaint, Defendant has made partial payments on Plaintiffs' homeowners insurance loss claim "including, but not limited to, $17,165.53 for emergency services and $115,604.48 for damages to the Dwelling." Notice Removal at Ex. 1, at ¶ 24. Yet, Plaintiffs allege that the total estimated actual cash value of the loss to the dwelling is $190,914.78. *Id.* at ¶ 25. Defendant therefore argues that the $17,165.53 for emergency services does not factor into the loss amount that Plaintiffs seek for damage to the dwelling itself. Def.'s Mem. Opp. at 6. Plaintiffs do not explicitly dispute this, but rather argue that a court could determine that the emergency service payments "were considered to be covered under the dwelling portion of Plaintiffs' claim." Pls.' Reply at 8. The question of coverage is not properly before the Court at this stage. Indeed, the Court cannot conclude that Plaintiffs' are, in

8

fact, entitled to $75,165.53, or to any damages for that matter. Moreover, the Court cannot rely on Defendant's inferences alone[1] to conclude that Plaintiffs have acted in bad faith Accordingly, the Court must defer to what Plaintiffs have actually pled in their initial pleadings under Count I, which is $74,000 plus attorney's fees. This argument in isolation, therefore, does not establish that the amount in controversy exceeds $75,000.

Second, Defendant argues the Court should consider attorney's fees in determining the amount in controversy. Def.'s Mem. Opp. at 6. "Generally, attorney's fees are not included in the amount-in-controversy calculation, but courts have created two exceptions to this rule: '(1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees.'" *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) (citing *15-102 Moore's Federal Practice*, Civil § 102.106(6)(a)). Plaintiffs notified Defendant in their original Complaint that they intended to seek attorney's fees pursuant to Virginia Code § 38.2-209. Notice Removal at Ex. 1, at ¶ 44. § 38.2-209 provides, in relevant part:

> "Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or fidelity bond or the extent to which his insurer is liable for compensating a covered loss, *the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.*"

(emphasis added).

Pursuant to § 38.2-209, Plaintiffs, as insured individuals suing their insurer to determine coverage under their homeowners insurance policy, are entitled to attorney's fees upon a court's

---

[1] Defendant does not offer any authority as to the appropriate standard to determine whether Plaintiffs have demanded a sum in good faith. Without more support, and because Defendant's inferences also implicate questions of insurance coverage, the Court cannot conclude that Plaintiffs' demanded a sum in bad faith.

9

finding that Defendant did not act in good faith in failing or refusing to make payment to Plaintiffs under the policy. *See* Notice Removal at Ex. 1, at ¶ 42 ("This suit is brought to establish coverage and, upon a determination of bad faith by the Court, the Plaintiffs are entitled to an award of their attorney's fees incurred herein."). Since § 38.2-209 mandates payment of attorney's fees upon such a finding by a court, the Court may properly consider attorney's fees in calculating the amount in controversy. *Francis*, 709 F.3d at 368; *see also Cradle v. Monumental Life Ins. Co.*, 354 F. Supp. 2d 632, 635 (E.D. Va. 2005) ("[I]f a state statute makes 'attorneys fees into substantive rights to which the litigants are entitled' then attorney's fees may be considered in calculating the amount in controversy under 28 U.S.C. § 1332.") (quoting *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983)).[2]

---

[2] The circumstances under which this Court analyzed § 38.2-209 have significantly changed. In *Cradle*, this Court relied upon *US Airways, Inc. v. Commonwealth Ins. Co.*, which held that "a judgment against the insurer acts as a condition precedent to any claim of bad faith in Virginia." 64 Va. Cir. 408 (2004). The Circuit Court of Virginia – whose authority was controlling since the Supreme Court of Virginia had not resolved the issue – reasoned that § 38.2-209 "does not create a separate cause of action; rather, any claim under the statute must stem from a suit that already exists." *Id.* The court concluded that while a plaintiff "may rely on § 38.2-209 for recovery of costs and fees . . . [they] cannot *in this current litigation*, claim a wholly separate cause of action for bad faith under the policy." *Id.* (emphasis in original). In finding such authority to be controlling on the issue, this Court found that a claim under § 38.2-209 may only be brought once a judgment is entered against a defendant. *Cradle*, 354 F. Supp. 2d at 635-36. Indeed, this Court noted that it would have followed the approach of sister circuits permitting the amount in controversy to include attorney's fees absent a showing of bad faith if not for "one significant difference between those cases and the case before the Court. In the preceding cases, the courts were able to consider the additional required showing prior to any judgment by the courts. In other words, whether the Plaintiff could make a showing of bad faith was a question before those courts for consideration." *Id.* at 636. This Court, in fact, concluded that attorney's fees under § 38.2-209 are "mandated fees." *Id.* Moreover, this Court's apprehension "to speculate as to whether the amount in controversy will exceed $75,000" derived solely from the state of Virginia law at the time, which prohibited the Court from "ascertain[ing] the amount of attorney's fees . . . until after any judgment." *Id.* Thus, if not for the Virginia law requirement at the time that judgment be a condition precedent to any claim of bad faith, this Court would have considered attorney's fees in its amount in controversy calculation. *See also Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL 2857191, at *5 (E.D. Va. July 21, 2008) ("*Cradle* supports the conclusion that a party may not ask for costs or attorneys' fees under section 38.2-209 in a separate cause of action: if that relief could be sought in a separate cause of action, it would be included in the amount in controversy.").

Ten years after this Court's decision, the Supreme Court of Virginia held that § 38.2-209(A) "does not create an independent cause of action for an insurer's bad faith breach of an insurance contract." *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 213 (2015). "Thus, it is not a cause of action separate from [plaintiff's] claim for breach of contract, nor is it a codified version of the common law claim for bad faith." *Id.* Rather, "[i]t is a vehicle for shifting attorney's fees and costs where otherwise such costs would not be recoverable." *Id.* The Supreme Court of Virginia primarily held that the word "court," as used in § 38.2-209(A), means that only a judge, not a jury, may determine whether an insurer has denied coverage, or failed or refused to pay the insurer, in bad faith. *Id.* at 214. In so holding, it did not disturb nor challenge that the plaintiff had originally pled bad faith under the statute. *Id.* Indeed, its holding

Unlike in *Francis*, the Court does not have before it any metric or previous judgment upon which to base what the attorney's fees in this case may be. *Francis*, 709 F.3d at 368. The Court nonetheless finds, however, that common sense and experience suggest those fees will exceed $1,000 should Plaintiffs prevail. *Id.*

Third and finally, even if the Court did not take attorney's fees into account, Defendant argues that the requested relief in Count II of Plaintiffs' original Complaint would provide the necessary value to exceed $75,000. Def.'s Mem. Opp. at 11-12. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt*, 432 U.S. at 347. In Count II, Plaintiffs sought declaratory relief, including that Defendant "has an obligation to pay the replacement cost loss without a deduction for depreciation once the actual cash value has been paid as may be incurred in the restoration of the Windstorm Loss."[3] Notice Removal at Ex. 1, at 7-8. Plaintiffs allege this right and rely on Virginia Code § 38.2-2119(B), which states:

> "Where any policy of insurance issued or delivered in this Commonwealth pursuant to this chapter provides for the payment of the full replacement cost of property insured thereunder, the policy shall permit the insured to assert a claim for the actual cash value of the property without prejudice to his right to thereafter assert a claim for the difference between the actual cash value and the full replacement cost unless a claim for full replacement cost has been previously resolved. Any claim for such difference must be made within six months of (i) the last date on which the insured received

---

clarified that such a claim for bad faith under the statute is *not* a cause of action separate from the breach of contract claim pled in the complaint. *Id.* at 213. In short, the Supreme Court of Virginia deemed it permissible for a plaintiff to plead a § 38.2-209 claim for attorney's fees as part of their breach of contract cause of action. In accordance with this holding, Plaintiffs have pled an allegation of entitlement to attorney's fees under § 38.2-209 within their breach of contract cause of action. Notice Removal at Ex. 1, at ¶¶ 41-44. Since the question of whether Plaintiffs could make a showing of bad faith is a question before the Court for consideration, the Court may, in this case, consider the statute-mandated attorney's fees in its amount in controversy calculation. *Cradle*, 354 F. Supp. 2d at 636.

[3] Plaintiffs argue the damages for Count II are explicitly limited to their *ad damnum* clause amount of $74,000. Pls.' Reply at 7, 14-15. The $74,000 limit self-imposed in their declaratory judgment count, however, only appears in their Amended Complaint. As discussed, the Court can only consider "the record at the time of the application for removal." *Alabama Great*, 200 U.S. at 216. Plaintiffs' original Complaint does not limit declaratory relief to $74,000. Moreover, the *ad damnum* clause in Count I cannot serve as a limit on potential recovery under Count II because they are separate claims for relief.

>>a payment for actual cash value or (ii) date of entry of a final order of a court of competent jurisdiction declaratory of the right of the insured to full replacement cost, whichever shall last occur."

*See also* Notice Removal at Ex. 1, at ¶¶ 49, 54.

The object of the litigation under Count II is "the replacement cost loss without a deduction for depreciation." *Id.* at 7-8; *see also Hunt*, 432 U.S. at 347. The original Complaint does not allege a specific amount of damages, or "value," in replacement costs, in part because, as Plaintiffs allege, "Liberty Mutual's breach of contract has resulted in Plaintiffs' inability to incur all replacement costs and trigger the payment of the replacement cost values." *Id.* at ¶ 53. The Court finds, however, that Defendant has proved it is more likely than not that the value of the replacement cost will exceed $1,000 since the ACV of the home is over $190,000. *See Francis*, 709 F.3d at 369. Thus, the Court finds Defendant has proved, "by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B); *see also Francis*, 709 F.3d at 369 ("As the complaint in this action did not seek a specific amount in damages, [defendant] need only 'prove by a preponderance of the evidence that the amount in controversy exceeds the [jurisdictional minimum].'" (quoting *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993))). Indeed, the Court finds that Defendant has proved by a preponderance of the evidence that the attorney's fees and replacement cost damages, individually, would each exceed $1,000. Even if Defendant had not proved that, however, the Court nonetheless finds that the combination of attorney's fees and replacement cost damages would more likely than not exceed $1,000, thus exceeding the jurisdictional threshold. *See Francis*, 709 F.3d at 369.

Thus, the Court finds it has subject matter jurisdiction over the instant action. Accordingly, Plaintiffs' Motion to Remand is **DENIED**.

### B. Attorney's Fees and Costs

Plaintiffs request an award of attorney's fees in their Motion to Remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Since the Court has subject matter jurisdiction over the instant action and will not be remanding it to state court, Plaintiffs' request for an award of attorney's fees is improper and therefore **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is **DENIED** and Plaintiffs' request for an award of attorney's fees is also **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Newport News, Virginia
March 15, 2022

Raymond A. Jackson
United States District Judge

13